IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

L.N. MCCLENDON, et al., )
)
    Plaintiffs, )
)
vs. ) Case No. 2:09-CV-4117-NKL
)
UNION PACIFIC RAILROAD )
COMPANY, )
)
    Defendant. )

# O R D E R

Pending before the Court are cross motions for summary judgment filed by Plaintiffs L.N. McClendon ("McClendon") and the Brotherhood of Locomotive Engineers ("BLET") [Doc. # 34] and Defendant Union Pacific Railroad Company ("Union Pacific") [Doc. # 32]. For the reasons stated below, the Court grants summary judgment in favor of Union Pacific on all of Plaintiffs' claims.

**I.**     **Factual background**[1]

    **A.**     **McClendon's Termination**

Plaintiff McClendon was employed by Union Pacific and was a member of the BLET. Another union, the United Transportation Union ("UTU"), represents conductors and trainmen at Union Pacific. Because of the ebb and flow between the positions, individuals

---

[1] In considering each parties' motion, the Court has drawn all inferences in favor of McClendon, the non-movant.

1

may be working for Union Pacific as either engineers or conductors. If there is high traffic, conductors are promoted to engineers. If the traffic is low, engineers are laid off and they use their seniority to obtain positions as conductors. The Railway Labor Act ("RLA") allows engineers to be members of either the BLET or the UTU, even while working under a collective bargaining agreement of the other union. 45 U.S.C. § 152, Eleventh (c).

On February 11, 2003, McClendon took contractual bereavement leave due to the death of his father. McClendon subsequently took extended bereavement leave, though he asserts that he made himself available for work after February 24 and before March 25. On March 21, Union Pacific removed McClendon from service and placed him under investigation. McClendon asserts in an affidavit to this Court, which Union Pacific disputes as inadmissible hearsay, that around this time he called the UTU to help him with his workplace problems and was told that the UTU did not represent him and that he should contact the BLET. It is undisputed that evidence of this conversation was not contained in the record before arbitrators of the National Railroad Adjustment Board, First Division ("NRAB") to decide his case.

On or about March 24, 2003, McClendon was notified that he forfeited his seniority and employment relationship with Union Pacific due to absenteeism. At the time of his termination, McClendon was working as a conductor for the UTU. However, the BLET filed a grievance against Union Pacific seeking reinstatement and backpay for McClendon. His grievance was heard by the NRAB.

**B.      The NRAB's Decision**

On March 22, 2007, the NRAB panel to hear his case dismissed McClendon's grievance as improperly brought by the BLET. The NRAB determined that the language of the collective bargaining agreement between Union Pacific and the UTU ("UP-UTU-CBA") was controlling in this case. In interpreting this the UP-UTU-CBA, the NRAB determined that the BLET did not have "representation rights for the conductors and trainmen covered by the UP-UTU agreement in effect on this property." Doc. 35-2, at p. 134. The NRAB reviewed Article C-17 of the UP-UTU-CBA, which provides that "[t]he right to represent conductors or trainmen in making and interpreting agreement, rules and rates of pay . . . shall be vested in the regularly constituted committee representing the conductors and trainmen . . . ." *Id.* Article C-17 further provides that the term "duly accredited representative or representatives" as it appears in the agreement means "the regularly constituted committee and/or officers of the [UTU]." *Id.* Moreover, Article C-15 provides that only "employees or [a] duly accredited representative" have the right to appeal. *Id.* at 137.

The NRAB concluded that challenging Union Pacific's termination of McClendon involved interpreting the UP-UTU-CBA provision regarding the handling of seniority for conductors. As a result, the NRAB concluded that claims involving interpretation of the UP-UTU-CBA "must be progressed by the UTU as opposed to the BLET."

In reaching this conclusion, the NRAB rejected the BLET's argument that the second sentence in Article C-17 allowed it to bring McClendon's claim under the UP-UTU-CBA. This sentence provides: "This, however, does not abridge the right of any conductor or trainman to take up a personal grievance with the officials of the railroad, whether by a

3

personal representative or through the Committee of the organization with which it is affiliated." Doc. 35-2, at p. 134. The NRAB concluded that this sentence dealt with taking up a "personal grievance" rather than a claim involving the interpretation of the UP-UTU-CBA. Because it determined the claim was improperly brought by the BLET, the NRAB dismissed the case and did not reach the merits of McClendon's claim.

On June 15, 2009, McClendon and the BLET filed the instant lawsuit seeking to set aside the NRAB's award, alleging the NRAB violated the RLA by failing to confine itself to its jurisdiction (Count I), the NRAB violated the RLA (Count 2), and McClendon's right to due process under the Fifth Amendment was violated (Count 3).

## II.     Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of demonstrating there is no genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). If the moving party satisfies its burden, Rule 56(e) requires the nonmoving party to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). When considering a motion for summary judgment, the Court must scrutinize the evidence in the light most favorable to the nonmoving party and the nonmoving party "must be given the benefit of all reasonable inferences." *Mirax Chem.*

4

*Prods. Corp. v. First Interstate Commercial Corp.*, 950 F.2d 566, 569 (8th Cir. 1991). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Liberty Lobby, Inc.*, 477 U.S. at 248.

## III.    Discussion

Under the RLA, there are only three narrow grounds under which the district court can overturn a NRAB award: (1) failure to comply with the requirements of the RLA; (2) failure of the NRAB order to conform itself to matters within the scope of the NRAB's jurisdiction; and (3) fraud or corruption by a member of the NRAB division making the order. 45 U.S.C. § 153, First (q). The court's review of NRAB awards has been described as "among the narrowest known to law." *Union Pac. R.R. v. Sheehan*, 439 U.S. 89, 99 (1978); *see also Finley Lines Joint Protective Bd. v. Norfolk S. Ry. Co.*, 312 F.3d 943, 946 (8th Cir. 2002). When reviewing an NRAB award, "[c]ourts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors . . . ." *Finley Lines*, 312 F.3d at 946 (quoting *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001)).

McClendon and the BLET challenge the NRAB's award on the following grounds: (1) whether it is a violation of due process, the RLA, and public policy to deny McClendon representation by the BLET at his grievance where the UTU declined to represent him; (2) whether it is a violation of the RLA and in excess of the NRAB's jurisdiction to allow the UTU to present submissions on issues other than the actual contract provision at stake; (3) whether it is a violation of the RLA and public policy to deny a railroad employee's claim

5

where a full record of the grievance has been prepared, the dispute conferenced, and the claim presented to the NRAB; and (4) whether the NRAB failed to conform to its jurisdiction and denied McClendon due process when it limited its contract interpretation to the UP-UTU-CBA and did not consider the BLET collective bargaining agreement with Union Pacific.

### A. BLET Representation of McClendon

Plaintiffs argue that the NRAB improperly dismissed McClendon's claim on the ground that the BLET was not authorized to represent him. Union Pacific cites to *Landers v. National Railroad Passengers Corp.*, 485 U.S. 652 (1988), in support of its argument that the NRAB's decision was appropriate. In *Landers*, an engineer who was a member of the UTU, but worked under a BLET contract, sought to be represented by the UTU at the grievance stage. *Id.* at 653-54. In *Landers*, the Supreme Court held that the engineer did not have the right to be represented by his union while working under the contract of another union. *Id.* at 658-59. Plaintiffs agree that the facts in this case are the same as those in *Landers*, except for one key fact. Plaintiffs claim that McClendon contacted the UTU to represent him and that the person who answered the phone told McClendon that the UTU did not represent him and that there was nothing the UTU could do for him. McClendon believes the person he spoke to was the shop steward but he did not provide a name of the person. Based on this fact, Plaintiffs seek to distinguish *Landers* because it did not address the issue of whether the railroad worker could be represented by the BLET when the UTU had expressly declined to represent him.

6

Union Pacific argues that this evidence cannot be considered by this Court because it is inadmissible hearsay and because it was not presented to the NRAB. The Court concludes the evidence was not properly before the NRAB. It is undisputed that this conversation recounted by McClendon in his affidavit to this Court was not contained in the record before the NRAB. Nor is there evidence that McClendon sought to introduce this evidence to the NRAB but was denied the right to do so. Rather, this fact was presented for the first time to this Court in the form of an affidavit dated January 26, 2010.

Plaintiffs cannot supplement the record at this late date. *See Mogge v. Dist. 8 Int'l Ass'n of Machinists*, 454 F.2d 510, 513 (7th Cir. 1971). Whether the BLET could represent McClendon was in issue at the NRAB hearing but McClendon never presented evidence that the UTU had declined to represent him. Moreover, the record before the NRAB contained two letters from Union Pacific, when McClendon's grievance was at the on-property stage, written in June and August of 2003 in which the BLET was advised it could not represent McClendon. *See* Doc. 35-1, at p. 13, June 3, 2003 letter from R. D. Rock ("Since Mr. McClendon worked under the provisions of the UTU Collective Bargaining Agreement, your appeal is procedurally defective . . . ."); Doc. 35-1, at p. 18, August 8, 2003 letter from Gloria Barton ("[Y]ou are not the designated representative to progress claims or interpret the UTU Agreement. . . . Therefore you should withdraw your claim and allow the claim to be progressed appropriately . . . .").

Thus, McClendon was aware in 2003 that whether the BLET could represent him was in dispute. Accordingly, the information presented to the Court by McClendon was not

properly preserved for appeal because it was not presented to the NRAB. *Mogge*, 454 F.2d at 513 ("To allow [defendant], after arbitration, to have the court supplement the record with information that was available at the time of arbitration would further undermine the very purpose of private arbitration."); *see also Goff v. Dakota, Minn. & E. RR. Corp.*, 276 F.3d 992, 998 ("The parties to an arbitration may waive procedural defects by failing to bring such issues to the arbitrator's attention in time to cure the defects." (citation omitted)). The NRAB cannot have violated McClendon's right to due process where information in McClendon's possession at the time of the hearing was never presented to it. Moreover, if the UTU had declined to progress a meritorious grievance, McClendon's remedy would be against the UTU for a breach of the duty of fair representation, not against the NRAB. *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164 (1993). Accordingly, given the Supreme Court's decision in *Landers* that an engineer does not have the right to be represented by his union while working under the contract of another union, the Court grants summary judgment in favor of Union Pacific on this claim.

**B.     UTU Presentation of Evidence Before the NRAB**

Plaintiffs next argue that the NRAB violated the RLA by allowing the UTU to present evidence on issues other than the relevant contract provision related to McClendon's termination. Plaintiffs argue that the issue of whether the BLET could represent him was not properly before the NRAB because the NRAB is confined to the record of the grievance proceedings. The procedural rules for the NRAB require that "all data submitted in support of [Union Pacific's] position must affirmatively show the same to have been presented to the

employees or duly authorized representative thereof and made a part of the particular question in dispute." 29 C.F.R. § 301.5(e). Plaintiffs argue that the only issue in dispute was McClendon's improper termination and money damages associated with his termination. However, on two occasions prior to the dispute reaching the NRAB level, Union Pacific had informed McClendon that it believed the BLET was the improper representative to bring his claim under the UP-UTU-CBA. Although the specific language and article of the UP-UTU-CBA was not quoted in these letters, the agreement was referenced.

Plaintiffs argue that they were taken by surprise when this evidence was presented at the hearing and did not have an opportunity to have a fair hearing on the issue. However, both parties agree that the issue was briefed and argued before the NRAB. The Court finds that the NRAB did not act outside its jurisdiction when it heard this evidence. The Court grants summary judgment in favor of Union Pacific on this claim.

### C. Merits of McClendon's Claim

Plaintiffs argue that it is against the RLA and public policy for the NRAB to fail to reach the merits of McClendon's claim. The Court disagrees. In this case the NRAB did not have jurisdiction to reach the merits of McClendon's claim. Pursuant to the RLA, before the NRAB can hear a claim, it must be "handled in the usual manner" by the union and the carrier until such grievance is denied by the "highest carrier officer designated to hear such matters." 45 U.S.C. § 153, First (i). Arbitration before the NRAB cannot occur until this exhaustion of on-property handling of the grievance. *Id.* at § 153, First (i)(j); 29 C.F. R. § 301.2(b).

9

Plaintiffs argue that under the RLA, at the NRAB level, McClendon is entitled to "be heard either in person, by counsel, or by other representative." 45 U.S.C. § 153, First (j). Plaintiffs claim that McClendon elected to have the BLET represent him before the NRAB as a statutory "other representative." However, this argument fails to recognize the jurisdictional issue that the NRAB faced, namely that the BLET had improperly represented McClendon during the on-property grievance process. On at least two occasions during this process, the BLET was informed that it was the wrong union to be bringing McClendon's claim.

In attempting to overcome this hurdle, Plaintiffs essentially argue that the BLET properly represented McClendon at the on-property grievance stage. Although the Eighth Circuit has not addressed this issue, the Seventh Circuit has, and the Court finds the analysis of the Seventh Circuit persuasive. In *Ryan v. Union Pacific Railroad Co.*, the plaintiffs were members of the BLET who wished to have the BLET represent them in grievances to arise under the UP-UTU-CBA. 286 F.3d 456, 458 (7th Cir. 2002). They argued that there was a past practice of allowing the BLET to handle on-property grievances despite the language in the CBA, which provided the UTU with exclusive representation rights. *Id.* at 459. Because of this past practice, the plaintiffs argued that the statutory language of the RLA regarding the "usual manner" of handling grievances should allow the BLET to represent plaintiffs, despite the language in the CBA giving the UTU exclusive representation rights. *Id.* Plaintiffs make this same argument in this case.

In rejecting the plaintiffs' arguments, the Seventh Circuit explained that the "usual

manner" provision in the statute "allows the railroad and union to prescribe *in the collective bargaining agreement* the manner in which grievance proceedings shall be conducted on the property, as the Union Pacific and the UTU did in 1978." *Id.* at 459 (emphasis in original). The court further explained that "[t]he failure to enforce a contractual term does not abrogate the term unless conditions for a waiver or estoppel are established, and the plaintiffs have made no effort to do that." *Id.* As a result, the court concluded that the plaintiffs cannot "appeal to the statute to supercede the 'usual manner' as determined by the collective bargaining agreement." *Id.*

Similar to the decision in *Ryan*, this Court concludes that the NRAB found that the UP-UTU-CBA granted the UTU exclusive rights to represent McClendon at his on-property grievance. Because this was the "usual manner" for handling grievances under the CBA, and because there is no argument that the UTU somehow waived its right under the contract, the Court concludes that, under the RLA, the NRAB could not have reached the merits of McClendon's claim and properly dismissed it. Accordingly, the Court grants Union Pacific summary judgment on this issue.

### D. The NRAB's Interpretation of UP-UTU-CBA

Plaintiffs argue that the NRAB erroneously limited its interpretation to the UP-UTU-CBA. Plaintiffs assert that even though there were numerous contracts and agreements between the BLET and Union Pacific regarding the rights of representation in the record before the NRAB, these contracts are not mentioned in the NRAB's decision. As a result, Plaintiffs claim that the NRAB failed to conform to its jurisdiction in violation of the RLA.

11

"An arbitrator's task is to interpret and apply the relevant collective bargaining agreement." *Brotherhood of Maintenance of Way Employees v. Soo Line R.R. Co.*, 266 F.3d 907, 910 (8th Cir. 2001). Under the court's narrow review under the RLA, the court will not overturn a NRAB decision "[a]s long as the arbitrator is arguably construing or applying the contract and acting within the scope of his authority." *Id.*

Neither party cites to a statutory provision of the RLA or a case which requires the NRAB to give a detailed analysis of the BLET's arguments and its reasons for discounting them. Moreover, the Supreme Court has explained "[a] mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award." *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 598 (1960). In *Brotherhood of Maintenance of Way Employees v. Soo Line Railroad Co.*, the Eighth Circuit considered an argument that a NRAB decision relied on an inapplicable collective bargaining agreement. The court concluded that it was possible that the NRAB had relied on an inapplicable collective bargaining agreement, but to find that it had would require speculation by the court. 266 F.3d at 911. The court also found that it was possible that the NRAB reviewed the record and determined that the union's burden of proof was not satisfied. *Id.* As a result, the court held that where such ambiguity existed, it was obligated "to grant the Board's decision the benefit of the doubt and conclude that jurisdiction was properly exercised." *Id.*

The NRAB decision in this case stated that its decision was based "upon the whole record and all the evidence." Further, the NRAB explained that "[t]he language of the

12

collective bargaining agreement between Union Pacific Railroad . . . and the United Transportation Union is controlling in this case." At the end of its decision, the NRAB again stated that "[a]fter study of the extensive record before this Board and the multiple arguments and objections and counter arguments and counter objections we find that the clear language of the Agreement is controlling and we are compelled to dismiss this claim." Plaintiffs argue that the use of the singular "the Agreement" at the end of the decision demonstrates that the NRAB did not consider the agreements the BLET presented for the NRAB to consider.

Similar to the Eighth Circuit's analysis in *Soo Line*, it is possible that the NRAB did not consider the evidence presented by Plaintiffs but to do so would require speculation on the part of this Court. It is equally possible, particularly given the language cited above, that the NRAB considered Plaintiffs arguments and rejected them in favor of applying and interpreting the UP-UTU-CBA. The Court will give the NRAB the benefit of the doubt that it properly exercised its jurisdiction. The Court grants Union Pacific summary judgment on this issue.

**IV.     Conclusion**

Accordingly, it is hereby ORDERED that the motion for summary judgment filed by Defendant Union Pacific Railroad Company is GRANTED [Doc. # 32] and the motion for summary judgment filed by Plaintiffs L.N. McClendon and the Brotherhood of Locomotive Engineers is DENIED [Doc. # 34]. Summary judgment in favor of Union Pacific is granted on all counts.

                                                                       s/ Nanette K. Laughrey
                                                                       NANETTE K. LAUGHREY
                                                                       United States District Judge

Dated: May 3, 2010
Jefferson City, Missouri